**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

—————————————————————
MICHAEL FINNERTY,           )
            )
        Plaintiff,       )       Civ. No. 03-558 (HAA)
            )
      -v-         )       **OPINION & ORDER**
            )
UNITED STATES POSTAL SERVICE,  )
and BRIAN FLYNN, individually and in  )
his official capacity as an employee of  )
Defendant, UNITED STATES POSTAL  )
SERVICE,            )
            )
       Defendants.    )
—————————————————————)

James P. Madden, Esq.
570 Kearny Avenue
Kearny, New Jersey 07032
*Attorney for Plaintiff*

Susan Handler-Menahem, Esq.
Assistant U.S. Attorney
970 Broad Street
Newark, New Jersey 07102
*Attorneys for Defendant United States Postal Service*

**ACKERMAN, Senior District Judge:**

This matter comes before the Court on a motion by Defendant United States Postal

Service ("USPS") to dismiss the Amended Complaint filed by Plaintiff Michael Finnerty

("Finnerty" or "Plaintiff").  For the reasons discussed below, Defendant's motion to dismiss

Plaintiff's Amended Complaint is GRANTED WITH PREJUDICE.

### *BACKGROUND*

Previously, this Court entertained a motion by USPS to dismiss Plaintiff's initial Complaint in its entirety.  In a decision dated May 26, 2004, this Court granted the motion to dismiss with prejudice as to all but one of the counts asserted in the Complaint.  The remaining count, which asserted a putative claim under the Privacy Act, 5 U.S.C. § 552a (the "Privacy Act" or the "Act"), was dismissed without prejudice to repleading.  Finnerty filed a slightly altered pleading on July 13, 2004, limited to a reframed Privacy Act claim.  USPS now moves to dismiss the Amended Complaint, asserting that Finnerty's Amended Complaint as a whole fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  USPS also argues that Finnerty's claim, which involves amendment of his employment records, is subject to dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or alternatively, that this claim fails as a matter of law under Federal Rule of Civil Procedure 12(b)(6), due to Finnerty's failure to exhaust administrative remedies regarding requests for amendment of records.

Finnerty is employed by USPS as a vehicle equipment operator at the Dominick V. Daniels Processing and Distribution Center located in Kearny, New Jersey.  Finnerty began his employment with the USPS in 1987.  According to the Amended Complaint, on February 9, 2001, at approximately 9:30 p.m., Finnerty and another postal employee were smoking cigarettes on the northeast platform of the facility when a Safety Specialist, Defendant Brian Flynn, accused Finnerty of smoking marijuana.

Defendant Flynn took Finnerty's keys to his forklift and prohibited him from using the vehicle.  Flynn verbally notified another managerial employee that he had seen Finnerty smoking a marijuana cigarette.  Flynn thereafter drafted a memorandum (the "Flynn Memorandum")

indicating that Flynn had observed Finnerty "putting out a joint." (Am. Compl. ¶ 4.) On February 10, 2001, the USPS issued a notice (the "Notice" or "Notice of Determination") that Finnerty was placed on an "off duty, without pay status." (*Id.* ¶ 5.) The Notice of Determination announced that the suspension was "to ensure [Finnerty's] safety as well as the safety of others" and that the suspension was "effective February 10, 2001, at 1750 hours pending the outcome of a fitness for duty [examination]." (*Id.* ¶ 7.) The Notice also indicated that the reason for the action was that "Mr. Flynn stated that he smelled marijuana and he also observed you putting out a marijuana cigarette." (*Id.* ¶ 8.) Both the Flynn Memorandum and the Notice of Determination, which are quoted in the Amended Complaint, have been submitted in full as attachments to a declaration of Plaintiff's counsel in opposition to the motion to dismiss.[1]

By notice dated February 12, 2001, the USPS ended Plaintiff's suspension and announced that it expected Plaintiff to return to duty on February 13, 2001. In addition, the February 12 notice informed Plaintiff that he was scheduled for a Fitness for Duty Examination on February

---

[1] Plaintiff has submitted copies of the Flynn Memorandum and the Notice of Determination, as well as other documents regarding Finnerty's efforts to exhaust administrative remedies, and has requested that this Court convert USPS's motion to dismiss into a motion for summary judgment. *See* Pl.'s Br. Opp'n Mot. Dismiss Pl.'s Am. Compl. 2, 3 ("[A]s there are materials extrinsic to the pleadings submitted by both parties on this motion, it is submitted that it is appropriate to decide the motion as one for summary judgment under Fed. R. Civ. P. 56(c).").) Because the Flynn Memorandum and the Notice of Determination were documents explicitly referenced in the Amended Complaint, this Court may consider these documents without converting the motion to dismiss into one for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that court is permitted to consider "document integral to or explicitly relied upon in the complaint" without converting motion to dismiss to one for summary judgment). With regard to Finnerty's counsel's declaration and documentary submissions on the issue of the exhaustion of administrative remedies, as well as a similar declaration and documents from USPS on this issue, this Court may consider those affidavits and documents because the exhaustion claim comes before the Court on a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Under that rule, as discussed later in this opinion, the Court is not limited to examination of the pleadings.

14, 2001.  Plaintiff received this letter sometime on February 16, 2001.  Plaintiff did not return to work at the USPS until sometime after February 17, 2001.

Plaintiff's union, the National Postal Mailhandlers Union, filed a grievance on Plaintiff's behalf regarding the emergency suspension.  On October 19, 2001, an arbitrator found that the USPS owed Plaintiff back pay for the period of February 12 through February 14, 2001, but denied any additional recovery for days beyond February 14, 2001.

Two years later, Plaintiff commenced this litigation by filing a Complaint against USPS and Brian Flynn,[2] asserting Fourth Amendment violations, tortious interference with contract and prospective economic advantage, violation of public policy and a putative Privacy Act claim.  After the original Complaint was dismissed by this Court in May 2004, Plaintiff was permitted to file an amended pleading asserting a proper Privacy Act claim.  USPS now moves to dismiss the Amended Complaint in its entirety.

## *ANALYSIS*

## I.   The Amended Complaint's Omission of Valid Statutory Authority Violates the Pleading Requirements of Rule 8(a)(2)

The bulk of USPS's motion asserts that the Amended Complaint should be dismissed because Plaintiff persists in failing to identify valid statutory authority for his Privacy Act claim, and thus fails to satisfy the pleading requirements of Rule 8(a)(2).  Rule 8(a)(2) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Federal Rules are based on notice pleading rather than fact pleading.

---

[2] USPS asserts that there is no evidence that Finnerty has attempted to serve Flynn with process, and indeed this Court has found no such evidence on the docket.  Flynn therefore has not appeared in this action, and the U.S. Attorney representing USPS has no authorization to represent Flynn in this action.

*Universe Tankships, Inc. v. United States*, 528 F.2d 73, 75 (3d Cir. 1975).  However, a pleading must set forth sufficient facts to put the defendant "on notice of the essential elements of plaintiff['s] cause of action."  *Holder v. City of Allentown*, 987 F.2d 188, 193 (3d Cir. 1993).

Plaintiff's Amended Complaint has been altered very little from the form of the original Complaint, and as a result, many of Plaintiff's initial pleading errors, noted and criticized in the prior motion to dismiss, appear again in the Amended Complaint.  One such flaw of the original Complaint was its reference to an alleged section of the Privacy Act that does not exist.  (*See* Compl. ¶ 4 (claiming violation of the nonexistent statutory section "5 U.S.C. § 552(a)(B)(4)").)  That erroneous reference remains uncorrected in the Amended Complaint.

The Privacy Act provides various causes of action in response to various kinds of violations.  Thus, a general citation to the Privacy Act is insufficient to adequately inform Defendants of the nature of Finnerty's claims.  Finnerty's Amended Complaint contains only a bare allegation that "the actions of the Defendants United States Postal Service and Brian Flynn violated the Plaintiff's rights under the Privacy Act, 5 U.S.C. Sec. 552 (a)(B)(4)," and cites a nonexistent section of the Privacy Act.  (Am. Compl. ¶ 14.)  Finnerty thus provides no detail in his Amended Complaint to assist USPS or this Court in identifying the elements of his causes of action, or otherwise deciphering the nature of his Privacy Act claims.  Thus, because the Amended Complaint cites no valid authority for Plaintiff's Privacy Act claims, and fails to provide sufficient detail to otherwise identify the nature of the claims, it fails to satisfy the pleading requirement of Fed. R. Civ. P. 8(a)(2), which demands a "short and plain statement" showing that Finnerty is "entitled to relief."

## II.    Plaintiff's Amended Complaint Must Be Dismissed With Prejudice, Because Further Amendment Of the Complaint Would Be Futile

The Third Circuit requires a court to grant leave to amend before dismissing a complaint that is merely deficient.  *See Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).   Dismissal with prejudice is appropriate only in certain circumstances, including circumstances in which further amendment would be futile because any revised pleading would not withstand a motion to dismiss.  *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.")  The Third Circuit has recognized that futility precludes amendment "if the amendment will not cure the deficiency in the original complaint, or if the amended complaint cannot withstand a renewed motion to dismiss."  *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (citing *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983)).

This Court has determined that the Amended Complaint is deficient in specifying the nature of Plaintiff's claims under the Privacy Act and must be dismissed under Rule 8(a)(2). This Court must further decide whether Finnerty's claims are curable, warranting dismissal of the Amended Complaint without prejudice, or flawed as a matter of law such that a further opportunity to amend would be futile, thereby justifying a dismissal of the Amended Complaint with prejudice.  Accordingly, this Court must evaluate Finnerty's potential claims, as articulated in Finnerty's counsel's submissions, to determine whether such claims would be subject to dismissal as a matter of law under Rule 12(b)(6).[3]

---

[3]  USPS has also argued that one of Finnerty's potential claims is subject to dismissal for lack of subject matter jurisdiction.  This Court will also analyze the potential claims under Rule 12(b)(1) later in this opinion.

When considering a motion to dismiss under Rule 12(b)(6), the reviewing court must construe the complaint liberally: the court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  *University of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1537-38 (3d Cir. 1993).  A "complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiff'[s] cause of action."  *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  Thus, the court must deny a motion to dismiss for failure to state a claim for relief "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *accord ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994).

Generally, in the dismissal context, a court "may only consider the pleading which is attacked by an FRCP 12(b)(6) motion in determining its sufficiency."  *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002).  However, in this case, there is no proposed pleading which outlines Finnerty's potential claims.  Rather, Finnerty's counsel suggests in his opposition papers that the Amended Complaint "has set forth the requisite facts to support a cause of action" under no fewer than five sections of the Privacy Act, and provides further detail as to the nature of such potential claims.  (Pl.'s Br. Opp'n Mot. Dismiss 4.)   The arguments of Finnerty's counsel may be considered by this Court in determining whether to dismiss Finnerty's pleading; a court "may consider documents which are attached to or submitted with the complaint, as well as legal arguments presented in memorandums or briefs and arguments of counsel" in determining the sufficiency of the claims under Rule 12(b)(6).  *Pryor*, 288 F.3d at 560.

**A.      Plaintiff Identifies Valid Statutory Authority for His Potential Claims**

In his brief in opposition to the motion to dismiss the Amended Complaint, Finnerty cites

various sections of the Privacy Act that provide civil remedies.  Essentially, the cited sections

provide for three types of claims: 1) a claim that Finnerty is entitled to amendment of his USPS

personnel file regarding the Flynn Memorandum; 2) a claim that the USPS's failure to keep

accurate records has resulted in an adverse determination that has harmed Finnerty; and 3) a

claim that the USPS has wrongfully disclosed records regarding Finnerty (namely, the Flynn

Memorandum and the Notice of Determination) and that Finnerty has been harmed as a result.

The first sections cited by Finnerty relate to the Privacy Act's establishment of a

procedure to "permit an individual to gain access to information pertaining to him in Federal

agency records . . . and to correct or amend such records."  Privacy Act of 1974, Pub. L. No. 93-

579, § 2, 88 Stat. 1896, *reprinted in* 1974 U.S.C.C.A.N. 2177-78 (congressional findings and

statement of purpose).  Finnerty cites a section of the Privacy Act that provides a federal civil

remedy "[w]henever any agency makes a determination . . . not to amend an individual's record

in accordance with his request, or fails to make [a] review" of the agency's refusal to honor the

individual's request for amendment of a record.  5 U.S.C. § 552a(g)(1)(A).  Finnerty also cites a

section of the Privacy Act that gives a court the power to direct the agency in question to amend

an individual's record in response to a request for amendment that has been denied by the

agency.  5 U.S.C. § 552a(g)(2)(A).  These two sections provide Finnerty with potential causes of

action if Finnerty can demonstrate that he made a request for amendment of a record and such

request was denied.

The next section cited by Finnerty provides for a federal civil remedy where a record

keeping agency "fails to maintain any record concerning any individual with such accuracy,

relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C).[4]  This section provides a potential cause of action to Finnerty if he can demonstrate that USPS's failure to maintain accurate records resulted in an adverse determination against him.

The third section cited by Finnerty, 5 U.S.C. § 552a(g)(1)(d), has been deemed the "catch-all" provision of the Privacy Act.  *Quinn v. Stone*, 978 F.2d 126, 131 (3d Cir. 1992).  This section provides a civil remedy for a claimant whenever a record keeping agency "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on the individual." 5 U.S.C. § 552(a)(g)(1)(d).  As noted by Finnerty in his opposition papers, the Third Circuit has applied this "catch-all" section in conjunction with the Privacy Act's prohibition on disclosure of records (codified at Section 552a(b)), to provide a cause of action where a claimant can demonstrate that "(1) the information [at issue] is covered under the Act as a 'record' contained in a 'system of records'; (2) the agency 'disclosed' the information; (3) the disclosure had an 'adverse effect' on the plaintiff . . . ; and (4) the disclosure was 'willful or intentional.'"  *Quinn*, 978 F.2d at 131.  In his opposition papers, Finnerty explicitly cites these wrongful disclosure elements as the basis for his Privacy Act claims.  Thus,

_____

[4]  Finnerty also cites to 5 U.S.C. § 552a(e)(5), another section of the Privacy Act that concerns the maintenance of accurate records to ensure fairness in agency determinations.  This section states the principle that "[e]ach agency that maintains a system of records shall . . . maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."  5 U.S.C. § 552a(e)(5).  This section of the Privacy Act does not itself provide for a civil remedy for its violation, but its principle is embodied in the remedy authorized in Section 552a(g)(1)(C) to address adverse determinations based upon errors in an individual's records.

9

this section provides a potential cause of action for Finnerty if he can demonstrate that information from a 'record' contained in a 'system of records' was disclosed by USPS and the disclosure of such information had an adverse effect on Finnerty.

Despite Finnerty's potential invocation of the above sections of the Privacy Act, dismissal of Finnerty's Amended Complaint with prejudice is appropriate here.  Finnerty's potential claim seeking amendment of his USPS personnel or employment records is flawed due to Finnerty's failure to exhaust administrative remedies, which deprives this Court of jurisdiction over such claims, pursuant to Rule 12(b)(1).  Finnerty's incipient claims seeking review of adverse employment determinations are subject to dismissal under Rule 12(b)(1) or Rule 12(b)(6) due to the preclusive effect of the civil service laws.  Finally, Finnerty's potential claim for damages stemming from wrongful disclosure of records, as articulated in Finnerty's opposition papers, fails to state a claim as a matter of law, pursuant to Rule 12(b)(6).  Thus, even if this Court were to grant Finnerty an opportunity to further amend his pleading to assert claims under those sections of the Privacy Act that Finnerty has identified, the amended pleading would be futile, as the proposed claims could not withstand a motion to dismiss.  *See Jablonski*, 863 F.2d at 292 (*citing Massarsky*, 706 F.2d at 125).  The Court will address each of these issues in turn.

III.    **This Court Lacks Subject Matter Jurisdiction over Plaintiff's Potential Claim for Amendment of Records, Due to Plaintiff's Failure to Exhaust Administrative Remedies**

Defendant USPS has asserted that Finnerty's inchoate claims for amendment of personnel records on the grounds that Finnerty has failed to exhaust the administrative remedies prescribed under the Privacy Act.  Finnerty's flawed Amended Complaint, as augmented by the explanations in Finnerty's opposition brief, seeks injunctive relief removing the Flynn

Memorandum and related documents from Finnerty's personnel file, and from the files of his superiors.  (*See* Am. Compl., Wherefore Clause (demanding "Removal of all documents relating to the February 9, 2001 incident from the Plaintiff's personnel file, and any other files maintained by the Defendant Postal Service relating to the February 9, 2001 incident."))  In support of this claim for relief, Finnerty cites 5 U.S.C. §§ 552a(g)(1)(A) (authorizing civil action for agency's denial of request to amend or failure to perform review after denial of request to amend); (g)(2)(A) (authorizing court to order amendment upon *de novo* review of agency's denial of amendment request); and (g)(2)(B) (authorizing costs and fees to prevailing plaintiffs in actions seeking amendment of records).  (Pl.'s Br. Opp'n Mot. Dismiss 6 (citing Privacy Act sections and demanding "the amendment of the records or removal of these records from his personnel file, and the files of managerial employees of the Defendant."))

### A. The Right to Sue for Amendment of Records under the Privacy Act Is Expressly Conditioned upon Exhaustion of Administrative Remedies

The right to file a civil suit to seek amendment of records under the Privacy Act is conditioned upon the claimant's first seeking relief through the administrative procedures specified in the statute.  *See Quinn* 978 F.2d at 137 (identifying statutory requirement that plaintiff exhaust administrative remedies before filing suit under 5 § U.S.C. 552a(g)(2)(A); *see also Dickson v. Office of Pers. Mgm't*, 828 F.2d 32, 40-41 (D.C. Cir. 1987) (emphasizing that exhaustion of remedies is precondition to claim under 5 U.S.C. § 552a(g)(1)(A)); *Nagel v. U.S. Dep't of Health*, 725 F. 2d 1438, 1440-41 (D.C. Cir. 1984) (explaining that "[e]xhaustion of these administrative remedies is a prerequisite to bringing civil suit to compel amendment").

**B.      Failure to Exhaust Administrative Remedies Is a Jurisdictional Bar to Suit for Amendment of Records under the Privacy Act**

Exhaustion of remedies may be required by express statutory language or other indications of Congressional intent: "It is settled that where Congress has 'clearly required exhaustion,' or where congressional intent is at least 'fairly discernible,' exhaustion will be deemed statutorily mandated." *Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), and *Massieu v. Reno*, 91 F.3d 416, 420 (3d Cir. 1966)). Where exhaustion of administrative remedies is imposed by statute, the exhaustion requirement is deemed jurisdictional, and failure to exhaust administrative remedies deprives the district court of jurisdiction to hear the claim. *Massieu*, 91 F.3d at 419 ("When a statute requires exhaustion, a Petitioner's failure to do so deprives this court of jurisdiction."); *see also Duvall*, 336 F.3d at 234 (finding statutory exhaustion requirement jurisdictional and directing district court on remand to dismiss for want of jurisdiction where administrative remedies had not been exhausted).

In the present case, the Privacy Act clearly prescribes a series of administrative procedures that must be followed before suit may be filed to seek amendment of records. *See* 5 U.S.C. §§ 552a(d)(2) and (d)(3). The Third Circuit has deemed these provisions to require exhaustion of administrative remedies. *Quinn*, 978 F.2d at 137. Because exhaustion of administrative remedies is mandatory under the Privacy Act, exhaustion of administrative remedies is a jurisdictional prerequisite to suit, and USPS's motion to dismiss to Finnerty's claims for amendment of records challenges this Court's subject matter jurisdiction, and is analyzed under Rule 12(b)(1).

There are two types of Rule 12(b)(1) motions, those which "attack the complaint on its face" and those which "attack the existence of subject matter jurisdiction in fact, quite apart from any pleading." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also Biase v. Kaplan*, 852 F. Supp. 268, 276 (D.N.J. 1994) (distinguishing between facial and factual challenges to jurisdiction).  A facial attack merely "'contest[s] the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true.'"  *CSR Ltd. v. Cigna Corp.*, ___ F. Supp. 2d __, No. 95-2947, 2005 WL 3479908, at *5 (D.N.J. Dec. 13, 2005) (quoting *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002)).  "In contrast, a trial court considering a factual attack accords plaintiff's allegations no presumption of truth.  In a factual attack, the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents and even limited evidentiary hearings."  *Turicentro*, 303 F.3d at 300 n.4.  "Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction-type motion need not be limited; conflicting written and oral evidence may be considered and a court may decide for itself the factual issues which determine jurisdiction."  *Biase*, 852 F. Supp. at 277.  "This type of a Rule 12(b)(1) motion need not be converted into a Rule 56 motion when extra-pleading materials are considered."  *Id.*

USPS correctly notes that an individual requesting amendment of records under the Privacy Act "is deemed to have failed to exhaust administrative remedies whenever the requester does not comply with the administrative process set forth under the Act, including . . . failure to comply with Privacy Act regulations."  (Def.'s Br. Supp. Mot. Dismiss 8 citing *Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 474 (5th Cir. 1997)).)  The provisions of the Privacy Act that generally describe the manner in which requests for amendments are to be administratively

pursued before a civil suit may be entered are augmented by USPS regulations, which provide greater detail regarding the required administrative procedures.

The Privacy Act indicates that upon receipt of a request for amendment, an agency must "promptly" make any correction or amendment or must inform the requester of the agency's refusal of the request to amend; the statute does not prescribe a timeline for response. 5 U.S.C. § 552a(d)(2)(B). The USPS regulations provide particularity in defining this "prompt" response, indicating that the USPS should respond to a request to amend within thirty days. 39 C.F.R. § 266.6(c)(2). Similarly, the Privacy Act provides that if a request for amendment is refused, the requester may seek a review of the refusal by the agency. 5 U.S.C. § 552a(d)(3). The USPS regulations also provide further detail for this request for review. If an individual's request for amendment is denied, or if no determination is made within the thirty-day period, the regulations provide that "the requester shall appeal to the General Counsel, U.S. Postal Service." 39 C.F.R. § 266.7(a)(1). Furthermore, the regulations provide that an appeal must be submitted within thirty days of the date of denial or within ninety days of a request for which no determination was made. 39 C.F.R. § 266.7(a)(2).

Finnerty indicates in his opposition papers that his request for amendment was included in correspondence from Finnerty's counsel to Daniel Jurgens, on March 12, 2001. Finnerty's counsel has submitted a declaration appending the correspondence in question. (Decl. of James P. Madden ("Madden Decl."), Ex C.) In response, on March 14, 2001, USPS sent Finnerty's counsel a letter indicating that because Finnerty was a member of the National Postal Mail Handlers Union, USPS would only respond to the Union as Finnerty's representative regarding the conditions of his employment. (Madden Decl., Ex D.)

14

USPS asserts that Finnerty failed to exhaust his administrative remedies because Finnerty failed to pursue administrative appeal or review of the USPS's refusal to amend or failure to respond to Finnerty's request for amendment of records.  USPS asserts that Finnerty was obligated by USPS regulations to appeal the refusal to amend or the failure to respond to the request to amend by filing an appeal request with the General Counsel of the Postal Service. USPS asserts that Finnerty never filed any such appeal, as indicated by the accompanying declaration of Joyce Blakely, a paralegal specialist for USPS who handles Privacy Act appeals sent to the General Counsel of the Postal Service.  (Decl. of Joyce Blakely ¶¶ 3-4.)  Ms. Blakely's declaration clearly indicates that neither Mr. Finnerty nor his attorney, Mr. Madden, ever filed an appeal with the General Counsel.  (*Id.*)  USPS therefore asserts that this court lacks jurisdiction to hear Finnerty's complaint because Finnerty failed to exhaust the administrative avenues for relief before filing this action in federal court.

Finnerty's counsel does not counter with any evidence that an appeal was filed with the General Counsel for the Postal Service.  Rather, Finnerty claims that he was excused from exhausting administrative remedies because any appeal would have been "futile," and cites as evidence of futility USPS's position in refusing to recognize anyone but Finnerty's Union as an appropriate representative of Mr. Finnerty with respect to conditions of employment.  (Pl.'s Br. Opp'n Mot. Dismiss 6-7.)  Finnerty's futility argument is unavailing, however, because where a statute makes exhaustion of administrative remedies a prerequisite to suit, the exhaustion requirement may not be excused on futility grounds.  *Nyhuis v. Reno*, 204 F.3d 65, 69 (3d Cir. 2000) (finding that "a statute with a jurisdictional requirement, . . . by definition cannot be subject to a futility exception"); *see also Duvall*, 336 F.3d at 234 (rejecting a futility exception "where the statute involved . . . requires exhaustion as a matter of jurisdiction").

Based on the arguments of counsel and the declarations, affidavits and documents submitted by both parties, this Court finds that Finnerty has failed to avail himself of administrative remedies prescribed by the Privacy Act and USPS regulations as a prerequisite to suit.  Because Finnerty has failed to exhaust the required administrative remedies, this Court lacks jurisdiction to consider Finnerty's claims for amendment of records under the Privacy Act, and thus Finnerty's claims for amendment of records are dismissed with prejudice pursuant to Rule 12(b)(1).

**IV.    This Court Lacks Jurisdiction over Plaintiff's Potential Claims of Adverse Effect or Adverse Determination Based on Incomplete or Erroneous Records, Because Such Claims Are Preempted by the Civil Service Reform Act**

Finnerty's Amended Complaint, as supplemented by the arguments presented in Finnerty's opposition to the motion to dismiss, asserts claims for damages caused by adverse determinations based on incomplete or erroneous records, and claims for adverse effects caused by incomplete or erroneous records.  (Am. Compl. ¶ 13, Wherefore Clause; Pl.'s Br. Opp'n to Mot. Dismiss 4.)  According to the Amended Complaint, on February 9, 2001, Finnerty's supervisor Flynn wrongly concluded that Finnerty had been smoking marijuana, and confronted Finnerty, who denied usage of marijuana.  (Am. Compl. ¶ 3.)  Flynn then drafted a memorandum that memorialized his erroneous conclusion that Finnerty had been smoking marijuana, and allegedly circulated the memorandum to various offices and persons within USPS, as well as Finnerty's union, Local 300.  (*Id.* ¶ 4.)  Subsequent to Flynn's report, USPS supervisory personnel drafted a notice that Finnerty was "being placed in an off duty, without pay status" because "Mr. Flynn stated that he smelled marijuana and he also observed you putting out a marijuana cigarette."  (*Id.* ¶ 7-8.)  This notice was signed by USPS managerial personnel and

carbon copied to the "Sr. Plant Mgr.," "Personnel," "EL & R," "Postal Police," "LUINA," "Admin. Aide" and "File."  (*Id.* ¶ 8.)  Finnerty claims that he "attempted to have any mention of the February 9, 2001 incident removed from his personnel file" (*id.* ¶12), and asserts that he was "adversely affected" by the actions of Flynn and the USPS, in that Finnerty "suffered loss of time from his employment, embarrassment, humiliation and mental pain and suffering" (*id.* ¶ 13).

The "adverse effect" suffered by Finnerty is therefore identified as the loss of pay and benefits resulting from USPS's decision to suspend Finnerty, as well as the mental suffering that Finnerty experienced in connection with that suspension.  The only "adverse determination" that Finnerty has identified in his submissions is USPS's decision to suspend Finnerty without pay as memorialized in the Notice of Determination.  The claims advanced by Finnerty seek damages as well as the expungement of records relating to the February 9, 2001 incident that spurred the decision to suspend Finnerty, including the Notice of Determination to suspend Finnerty.

Accordingly, Finnerty's "adverse determination" and "adverse effect" claims constitute an attempt to revisit or review adverse employment determinations.  This Court lacks jurisdiction to hear such claims, because such collateral attacks to adverse employment determinations brought under the auspices of the Privacy Act are preempted by the comprehensive scheme governing employee relations prescribed by the Civil Service Reform Act (CSRA), 5 U.S.C. §§ 7501-7514 (2005).  Finnerty, as an employee of USPS, is subject to federal statutes setting procedures for review of adverse employment determinations, in particular, certain sections of the CSRA.  *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 796 (3d Cir. 2003) (finding CSRA applicable to USPS employee, and dismissing employment-related claims as preempted by CSRA); *see also Jefferson v. U.S. Postal Serv.*, No. 3:98-2066, 1999 U.S. Dist. LEXIS 7083, at *3 (N.D. Tex. May 11, 1999) (noting that Postal Reorganization Act of 1970 ("PRA"), 39 U.S.C.

§§ 1001-1011, 1201-1209 (2005) "establishes a comprehensive scheme governing employment relations within the Postal Service . . . . specifically incorporat[ing] chapter 75 of the CSRA [,5 U.S.C. §§ 7511-7514 (2005)], which includes several provisions establishing an appeals procedure for reviewing adverse personnel actions taken by federal agencies").

Finnerty's claims center around USPS's decision, based upon the Flynn Memorandum and embodied in the Notice of Determination, to suspend him temporarily pending the completion of a fitness for duty examination.  The sections of the CSRA applicable to USPS employees provide for a comprehensive scheme regarding procedures for appeal of suspension decisions to the Merit Systems Protection Board ("MSPB").  *See* 5 U.S.C §§ 7501-7514 (2005). The remedies Finnerty seeks under the Privacy Act, namely, damages resulting from loss of wages and benefits, and compensation for mental suffering due to an allegedly improper suspension as well as the amendment or correction of personnel records regarding the allegedly improper suspension, are remedies that are appropriately sought on an administrative appeal to the MSPB.  *See Vesella v. Dep't of the Air Force*, No. 92-2195, 1993 U.S. App. LEXIS 15449, at *4 (1st Cir. June 28, 1993) (dismissing Privacy Act claims on CSRA preemption grounds, noting that "Plaintiff's complaint sought from the district court remedies normally within the purview of the MSPB, including . . . backpay . . . and correction of inaccuracies, in addition to compensation for unspecified injury to his reputation").

Courts in various circuits have similarly dismissed Privacy Act claims where the claims constitute challenges to adverse employment determinations which are governed by, and thus preempted by, the CSRA.  *See, e.g.*, *Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1130 (9th Cir. 2002) (holding that CSRA precludes consideration of Privacy Act claims regarding adverse employment actions based on allegedly false documents because such claims "are in fact

18

complaints about prohibited personnel practices under the CSRA"); *Kleiman v. Dep't of Energy*, 956 F.2d 335, 338 (D.C. Cir. 1992) (affirming dismissal of Privacy Act claims as preempted by CSRA; refusing to permit "the exhaustive remedial scheme of the CSRA" to be "impermissibly frustrated by granting litigants, under the aegis of the Privacy Act or otherwise, district court review of personnel decisions judicially unreviewable under the CSRA"); *Henderson v. Soc. Sec. Admin.*, 908 F.2d 560, 560-61 (10th Cir. 1990) (affirming dismissal of Privacy Act claims that "essentially sought review of Social Security's reinstatement determination, and therefore review of an employment decision," noting that "the Privacy Act does not vest the court with jurisdiction to review personnel decisions where the Civil Service Reform Act precludes such review").

The foregoing cases support this Court's view that Finnerty's claims relating to "adverse effects" and "adverse determinations" based on inaccurate documents are disguised claims for review of the USPS's determination to temporarily suspend Finnerty.  As such, these claims should have been administratively pursued under the CSRA, and therefore are preempted by the CSRA, which provides a comprehensive scheme for administrative appeal of employment suspension determinations to the MPSB.  For these reasons,  Finnerty's Privacy Act claims based on "adverse effects" or "adverse determinations" resulting from allegedly inaccurate or incomplete records are subject to dismissal, either because this Court lacks jurisdiction over such claims under Rule 12(b)(1), or because the claims fail as a matter of law under Rule 12(b)(6). Accordingly, Finnerty's deficient Amended Complaint shall be dismissed, and Finnerty shall not be permitted a further opportunity to replead these putative "adverse determination" claims.

**V.      Plaintiff's Potential Claims for Wrongful Disclosure Are Subject to Dismissal as a Matter of Law**

According to the limited allegations of the Amended Complaint and the more illustrative explanations in Finnerty's opposition papers, Finnerty asserts Privacy Act claims premised upon his supervisor's distribution of the Flynn Memorandum that documented Flynn's perception of Finnerty's alleged marijuana use, and the USPS's distribution of the Notice of Determination, which memorialized USPS management's determination to place Finnerty on a non-paid, off-duty status, based on Flynn's alleged observation of drug use by Finnerty.  Finnerty's opposition papers frame his Privacy Act claim thusly: "taking all of his allegations as true, a reasonable factfinder could find that the two memoranda in question (records under the Act) were disclosed by the agency and they had an adverse effect upon the Plaintiff."  (Pl's Br. Opp'n Mot. Dismiss 4.)  Finnerty claims damages for lost wages, benefits and other remuneration, as well as damages for mental and emotional distress, caused by the distribution of these documents.

Plaintiff cannot articulate any valid claims under the Privacy Act based upon the distribution of the Flynn Memorandum or the Notice of Determination.  Although the Privacy Act prohibits disclosure of information constituting a "record" retrieved from a "system of records," it does not prohibit disclosure of information derived from other sources.  In particular, it does not protect information derived from the direct sensory perception of a witness.  The critical information in both the Flynn Memorandum and the Notice of Determination is Flynn's allegation of Finnerty's marijuana use.  Because the source of this information is Flynn's own observations, the disclosure of these documents does not constitute a violation of the Privacy Act.

### A.   The Privacy Act's Prohibition on Disclosure Relates Only to Information Retrieved from a "System of Records"

The legislative history of the Privacy Act "indicates that Congress was concerned predominantly with the increasing use of computers and sophisticated information systems and the potential abuse of such technology." *Thomas v. U.S. Dep't of Energy*, 719 F.2d 342, 345 (10th Cir. 1983).  Congress passed the Privacy Act "'to protect the privacy of individuals identified in information systems maintained by Federal agencies' by preventing the 'misuse' of that information." *Id*. (quoting Privacy Act of 1974, Pub. L. No. 93-579, § 2, 88 Stat. 1896, *reprinted in* 1974 U.S.C.C.A.N. 2177-78 (congressional findings and statement of purpose)).

The Privacy Act permits an individual to "prevent records pertaining to him obtained by [federal] agencies for a particular purpose from being used or made available for another purpose without his consent." *Id.*  The Privacy Act's prohibition of disclosure of information relates only to disclosure of "any record which is contained in a system of records." *Quinn*, 978 F.2d at 132. A "record" is defined by the Act as

> any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. § 552a(a)(4).  A "system of records" is defined as:

> a group of records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

5 U.S.C. § 552a(a)(5).

**B.     The Privacy Act Does Not Encompass Disclosure of Information Acquired by a Federal Official or Employee through Personal Observation**

The Privacy Act's prohibition on disclosure of information "by its terms contemplates a 'system of records' as the direct or indirect source of the information disclosed." *Thomas v. U.S. Dep't of Energy*, 719 F.2d at 345.  "The disclosure of information derived solely from independent sources is not prohibited by the statute even though the identical information may be contained in an agency system of records." *Id*.  As noted by the Tenth Circuit in *Thomas*, the distinction between information retrieved from a system of records and information independently acquired has been uniformly recognized by courts interpreting the Act." *Id.* (collecting cases).  Notably, as recognized by one Illinois court, "[t]here is no provision of the Privacy Act which prohibits providing information to a third party without prior consent of the subject which a federal official has acquired from personal observation or knowledge obtained from sources other than a record within the meaning of the Privacy Act." *Jackson v. Veterans Admin.*, 503 F. Supp. 653, 655-57 (N.D. Ill. 1980).

Flynn's creation of the memorandum documenting Finnerty's alleged marijuana use, and the subsequent disclosure of that memorandum to persons within and without the USPS, cannot serve as a basis for Privacy Act claims because Flynn's memorandum serves to document his own observations.  Finnerty's argument that the act of carbon copying the memorandum to "File" renders the memorandum a "record" within the purview of the Privacy Act, and consequently renders the disclosure of the memorandum a violation of the Act, is unavailing.  The fact that the memorandum documenting Flynn's observations may have been simultaneously circulated to recipients and directed to a file and thereafter maintained as a "record" in a "system of records" does not change the fact that Flynn's *source* of the information was his own observation, and not

a retrieval of information from a system of records.  *See Olberding v. U.S. Dep't of Defense*, 709

F.2d 621, 622 (6th Cir. 1983) ("The interpretation contended for by plaintiff – that section

552a(b) is violated if agency personnel disclose information they possess by means other than

retrieval from a system of records if they know or have reasonable grounds to believe that the

information may also be found in a record contained in a system of records – would create an

intolerable burden and would expand the Privacy Act beyond the limits of its purpose, which is

to preclude a system of records from serving as the *source* of personal information about a person

that is then disclosed without the person's prior consent."); *see also Krieger v. Fadely*, 199

F.R.D. 10, 13 (D.D.C. 2001) ("The Privacy Act speaks to the disclosure of records; it does not

create a monastic vow of silence which prohibits governmental employees from telling others

what they saw and heard merely because what they saw or heard may also be the topic of a record

in a protected file.")  As noted by the District Court for the District of Columbia in *Krieger*:

> Under th[e Privacy] Act, there is a rule of retrieval, not a rule of coincidence.  If there
> is information in a record, and a federal employee gained that same information from
> the use of her own senses, the employee's telling others what she saw or heard does
> not violate the Privacy Act merely because there is a record, subject to the Privacy
> Act, which also contains that information."

*Krieger*, 199 F.R.D. at 13.

In light of the foregoing cases, Finnerty cannot sustain a claim of a Privacy Act violation

premised upon Flynn's disclosure of information that he received through personal observation.

Accordingly, any claims against USPS relating to Flynn's disclosure of information he personally

observed are dismissed with prejudice.  Likewise, the claims against Defendant Flynn personally

must be dismissed with prejudice.[5]  This dismissal includes claims relating to the circulation of

_____

[5]  USPS has argued that the claims against Flynn individually are subject to dismissal
because the Privacy Act does not authorize actions against individual officers of record keeping
agencies for disclosure of records protected by the Act, as only the agency itself may be sued.

Flynn's memorandum regarding the February 9, 2001 incident, as well as any claims pertaining to Flynn's alleged communication with managerial employee Bob Bevan regarding the February 9, 2001 incident.

Finnerty's claims of wrongful disclosure of the Notice of Determination informing Finnerty that he was being placed on an "off duty, without pay status" due to Flynn's allegations of marijuana use are also flawed as a matter of law.  The Notice of Determination, attached as an exhibit to the declaration of Finnerty's counsel, states that the reason that Finnerty was placed on off duty status was that "[s]pecifically, on Friday, February 9, 2001 at 2130 hours Safety Specialist Brian Flynn observed you outside of the building near Bay 119.  Mr. Flynn stated that he smelled marijuana and he also observed you putting out a marijuana cigarette."  (Madden Decl., Ex. B.)  The Notice of Determination was signed by Y. Vasquez and Daniel Jurgens.  (*Id.*)

The Notice of Determination specifically states that it was based upon the observations of Brian Flynn.  Thus the Notice of Determination, like the Flynn Memorandum, is based upon information derived from an independent source, and is not based upon information derived from a "record" in a "system of records" giving rise to a wrongful disclosure claim under the Privacy Act.  *See Olberding*, 709 F.2d at 622 ("The only disclosure actionable under section 552a(b) is one resulting from a retrieval of the information initially and directly from the record contained in a system of records.")  Furthermore, the fact that the Notice of Determination was simultaneously directed to a "File" in the USPS does not render the disclosure of the Notice of Determination an actionable disclosure under the Privacy Act.  *See Thomas*, 719 F. 2d at 345

_____

(Def.'s Br. Supp. Mot. Dismiss 1 (citing 5 U.S.C. § 552a(g)(1) (providing that "the individual may bring a civil action against the agency")).)  Had this Court not determined that the claims relating to Flynn's disclosure of information gleaned through personal observation are not cognizable under the Privacy Act, the claims against Flynn would have been dismissed for the reasons advanced by USPS.

("The disclosure of information derived solely from independent sources is not prohibited by the statute even though identical information may be contained in an agency system of records.")

Thus, Finnerty cannot assert a claim premised on the circulation of either the Flynn Memorandum or the Notice of Determination, for wrongful disclosure of records resulting in adverse effects to Finnerty, because the disclosed information complained of (the alleged observation of marijuana use) was based on personal observation by Brian Flynn, and was not derived or retrieved from a record within a system of records under the Privacy Act.

### Conclusion

For the foregoing reasons, it is hereby ORDERED on this 4th day of January 2006 that USPS's motion to dismiss the Amended Complaint in its entirety is GRANTED WITH PREJUDICE.

Newark, New Jersey
Dated: January 9, 2006                                    s/ Harold A. Ackerman, U.S.D.J.